# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:11cv50

| | |
|---|---|
| ACTS RETIREMENT-LIFE COMMUNITIES, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TOWN OF COLUMBUS, NORTH CAROLINA, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the following pleadings:

(1) The Defendant's Motion to Dismiss [Doc. 5] and Memorandum of Law in support thereof [Doc. 6];

(2) The Plaintiff's Response Opposing Defendant's Motion to Dismiss [Doc. 12];

(3) The Defendant's Reply to Plaintiff's Response Opposing Motion to Dismiss [Doc. 13];

(4) The Magistrate Judge's Memorandum and Recommendation regarding the disposition of Defendant's Motion to Dismiss [Doc. 21];

(5) The Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 22];

(6) The Defendant's Response to Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 23];

(7) The Plaintiff's Objection to Improper Response Filed by Defendant [Doc. 26];

(8) The Defendant's Memorandum Regarding Applicability of 28 U.S.C. § 1342 [Doc. 30]; and

(9) The Plaintiff's Brief Regarding the Johnson Act, 28 U.S.C. § 1342 [Doc. 31].

## I. PROCEDURAL BACKGROUND

The Plaintiff ACTS Retirement-Life Communities, Inc. initiated this action against the Defendant Town of Columbus, North Carolina in the Superior Court of Polk County, challenging the rates that the Defendant charges the Plaintiff for water and sewer service. The Plaintiff's Complaint seeks (1) a declaration that the rates charged violate the Defendant's Charter (First Claim for Relief); (2) a declaration that the rates violate Article I, Section 1 of the North Carolina Constitution (Second Claim for Relief); (3) a declaration that the rates are unconstitutional discriminatory taxes in violation of Article V, Section 2 and Article I, Section 1 of the North Carolina Constitution and the Fourteenth Amendment to the Constitution of the United States (Third Claim for Relief); (4) a declaration that the rates violate equal protection and are an unconstitutional taking in violation of the Fourteenth Amendment to the United

States Constitution (Fourth Claim for Relief); (5) an award of monetary damages under a theory of unjust enrichment (Fifth Claim for Relief); and (6) a request for a permanent injunction requiring the Defendant to treat the Plaintiff as a single commercial user for the purposes of the water and sewer charges (Sixth Claim for Relief). [Doc. 1-1]. The Defendant removed the case to this Court on the basis of federal question jurisdiction on March 11, 2011. [Doc. 1].

On June 15, 2011, the Defendant moved to dismiss the Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the Defendant argued that: (1) the Plaintiff's claims are barred by the statute of limitations; (2) the Plaintiff's claim for violation of the Defendant's Charter is superfluous; (3) the Plaintiff failed to state a claim upon which relief can be granted for unconstitutional taxation because water usage fees are not taxes and the Plaintiff failed to exhaust its administrative remedies; (4) the Plaintiff's direct claims under the North Carolina Constitution cannot be maintained because an adequate state remedy exists for the alleged violations; and (5) the Plaintiff failed to state a claim for unconstitutional taking because the imposition of water fees is

allowed by statute and because charging for water and sewer service does not constitute a governmental taking. [Doc. 5].

The Plaintiff filed a Response on July 20, 2011, opposing the Town's Motion. [Doc. 12]. Specifically with regard to its taxation and constitutional claims, the Plaintiff argued that comparable claims had been pursued successfully by plaintiffs in a similar state court action, and thus such claims are proper methods of challenging discriminatory municipal billing practices. Nevertheless, "[t]o prevent the parties and this Court from having to devote additional time and resources to arguing unnecessary claims," the Plaintiff stated that it intended to seek dismissal of such claims without prejudice, either by a stipulation of dismissal entered with the Defendant's consent or by motion. [Doc. 12 at 9].

In its Reply filed on August 1, 2011, the Defendant indicated that it had consented to the dismissal of the Plaintiff's taxation and state constitutional claims but that as of the date of the filing of the Reply brief, no such dismissal had been filed. The Defendant therefore reiterated its arguments for dismissal for all of the Plaintiff's claims with prejudice. [Doc. 13].

On August 11, 2011, the Plaintiff moved for a voluntary dismissal without prejudice of its Second Claim for Relief, to the extent that it is based

4

on the North Carolina Constitution, and its Third and Fourth Claims for Relief. Arguing that the dismissal of these claims eliminated any federal question, the Plaintiff further moved for remand of this matter back to Polk County Superior Court. [Doc. 14]. The Defendant opposed the Plaintiff's motion, arguing that it would be substantially prejudiced if the Plaintiff's claims were dismissed without prejudice at this stage of the litigation. [Doc. 18]. On September 26, 2011, the Magistrate Judge entered an Order denying without prejudice Plaintiff's motion to dismiss. [Doc. 20].

On October 20, 2011, the Magistrate Judge entered a Memorandum and Recommendation regarding the disposition of the Defendant's Motion to Dismiss. The Magistrate Judge found that, by agreeing to dismiss its constitutional and taxation claims as set forth in the Second, Third, and Fourth Claims for Relief and by failing to address the substantive grounds for dismissal raised by the Defendant, the Plaintiff had abandoned these claims. [Doc. 21 at 3]. The Magistrate Judge therefore recommended that these claims be dismissed with prejudice. [Id.]. With respect to the remaining state law claims, the Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction and remand this case to the Superior Court of Polk County. [Id.].

The Plaintiff filed Objections to the Magistrate Judge's Memorandum and Recommendation on November 3, 2011. [Doc. 22]. The Defendant filed a Response to the Plaintiff's Objections on November 21, 2011. [Doc. 23]. The Plaintiff objects to the Defendant's Response as improperly raising untimely objections to the Memorandum and Recommendation. [Doc. 26].

On December 21, 2011, the Court entered an Order directing the parties to file briefs regarding the issue of whether the Johnson Act, 28 U.S.C. § 1342, divests the Court of jurisdiction to entertain the Plaintiff's claims. [Doc. 27]. The parties filed their briefs in accordance with the Court's Order on January 11, 2012. [Docs. 30, 31].

Having been fully briefed, these matters are ripe for disposition.

## II. STANDARD OF REVIEW

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The

Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

## III. DISCUSSION

The Plaintiff objects to the Magistrate Judge's conclusion that it abandoned its taxation and constitutional claims set forth in the Second, Third, and Fourth Claims for Relief. While not objecting to the Magistrate Judge's recommendation regarding the dismissal of the Fourth Claim for Relief (the only claim that the Plaintiff contends asserts a federal claim)[1], the Plaintiff requests that the dismissal of this claim be without prejudice. Upon the dismissal of its taxation and constitutional claims without prejudice, the

---

[1] The Plaintiff's assertion that its Fourth Claim for Relief is the sole federal claim asserted in the Complaint is not accurate, as the Third Claim for Relief also alleges a federal constitutional claim. [See Doc. 1-1 at ¶28 (alleging "a form of discriminatory taxation that violates the North Carolina Constitution, Article V, Section 2 and Article 1, Section 1, *as well as the Fourteenth Amendment to the Constitution of the United States* . . . .") (emphasis added).

7

Plaintiff offers no objection to the recommendation that this matter be remanded to the Polk County Superior Court. [Doc. 22].

At the outset, the Court notes that the Plaintiff unnecessarily complicated matters in this case by failing to dismiss its constitutional and taxation claims in a proper and timely manner. Rule 15 of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course within 21 days after service of a Rule 12(b) motion. See Fed. R. Civ. P. 15(a)(1)(B). The Plaintiff therefore had the opportunity to amend its Complaint without leave of Court within 21 days of the filing of the Motion to Dismiss. Instead of doing so, however, the Plaintiff chose to file a motion for voluntary dismissal of such claims pursuant Federal Rule of Civil Procedure 41. In denying that motion without prejudice, the Magistrate Judge gave explicit instructions to the Plaintiff regarding the proper procedure for dismissal of these claims: (1) the Plaintiff could move to dismiss the entire action pursuant to Rule 41 and re-file in state court without the federal claims or (2) the Plaintiff could request leave to amend the Complaint and file an amended complaint that removed all the federal claims. [See Doc. 20 at 3-4]. The Plaintiff did not immediately move to amend its Complaint or dismiss its action, and no motion was filed requesting additional time to do so, even

8

though the Defendant's Motion to Dismiss had been fully briefed and was ripe for disposition. When nearly thirty days passed with no action by the Plaintiff, the Magistrate Judge then issued his Memorandum and Recommendation, concluding that the Plaintiff had abandoned its constitutional and taxation claims and recommending that these claims be dismissed. [Doc. 21]. The Plaintiff now objects to the Magistrate Judge's proposed conclusion that these claims were abandoned and therefore should be dismissed with prejudice. [Doc. 22]. In its Response to the Plaintiff's Objections, the Defendant argues that to the extent that Plaintiff's Objections requires the Court to reconsider the substance of the Plaintiff's Complaint and the Defendant's Motion to Dismiss, the Court should "modify" the Memorandum and Recommendation by dismissing all of the Plaintiff's claims on the grounds that they are barred by the statute of limitations. [Doc. 23].

The Court need not reach either of these arguments, however, because the Court concludes that a remand of this case is mandated by the Johnson Act, 28 U.S.C. § 1342, which provides as follows:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

9

> (1) Jurisdiction is based solely on diversity of citizenship, or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and,
>
> (3) The order has been made after reasonable notice and hearing; and,
>
> (4) A plain, speedy and efficient remedy may be hand in the courts of such State.

28 U.S.C. § 1342.

"[T]he Johnson Act's limitation on jurisdiction applies only when all of its conditions have been met, and the party invoking the Johnson Act has the burden to show these conditions have been met." Williams v. Professional Transp., Inc., 388 F.3d 127, 131 (4th Cir. 2004); U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1207 (10th Cir. 1999) ("Tristani").

In construing the Johnson Act, the Court is mindful that "[t]he Act is to be broadly applied to keep challenges to order affecting rates out of the federal courts." Hanna Mining Co. v. Minn. Power and Light Co., 739 F.2d 1368, 1370 (8th Cir. 1984); see also Tristani, 182 F.3d at 1207 ("by its broad wording it is clear that the Johnson Act was intended to keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel'") (citations omitted); Norman Apartment Ass'n v. City of Norman, 64 F.

App'x 166, 168 (10th Cir. 2003) ("Our cases have construed the Johnson Act broadly, 'to effect a general hands-off policy relative to state rate making.") (citation omitted).

### A.   Order Affecting Rates

The Johnson Act divests federal courts of jurisdiction only in cases involving "order[s] affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision."  28 U.S.C. § 1342.  Because it is "quite common" for municipalities to set utility rates by ordinance, 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, and Vikram David Amar, Federal Practice and Procedure § 4236 at 231 (3d ed. 2007), courts have construed municipal ordinances to be "orders affecting rates" within the meaning of the Act. See General Inv. & Serv. Corp. v. Wichita Water Co., 236 F.2d 464, 466 (10th Cir. 1956); Pudlik v. Pub. Serv. Co. of Colo., 166 F.Supp. 921, 924 (D. Colo. 1958); East Ohio Gas Co. v. City of Cleveland, 23 F.Supp. 965, 966-67 (E.D. Ohio 1937), aff'd, 94 F.2d 443 (6th Cir. 1938).

In the present case, the Plaintiff is challenging the Defendant's decision to change the classification of its meters from commercial to residential , thus requiring the Plaintiff to pay higher water and sewer rates.  The Defendant is

11

vested with the authority to set and vary its water and sewer rates by municipal ordinance. See N.C. Gen. Stat. § 160A-314(a). The change in the Plaintiff's classification was the result of a June 18, 2002 Town Meeting, at which the Town Administrator recommended that the Town Council change the water and sewer rates charged to the Plaintiff. [Minutes of Regular Town Meeting, Doc. 30-2].[2] The Town Administrator's recommendation was approved and adopted by the Council. [Id. at 4-5]. While the classification change was not the result of a formal ordinance, it is clear from the minutes of the Town Meeting that the Council was applying an established ordinance which authorized different rates to be charged to residential and commercial customers. Mindful that the Johnson Act must be construed broadly, see Hanna Mining Co., 739 F.2d at 1370, the Court concludes that the Town Council's application and interpretation of its own ordinance, which resulted in the changing of Plaintiff's water and sewer rate classification from commercial to residential, constituted an "order affecting rates" within the meaning of the Johnson Act. See Trading Co. of N. Am., Inc. v. Bristol Twp.

---

[2]Because the Johnson Act implicates matters of subject matter jurisdiction, the Court may look beyond the pleadings and consider any evidence that has been submitted on the issue in order to determine whether subject matter jurisdiction in fact exists. Cf. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (holding that when a defendant challenges subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment).

Auth., 47 F.Supp.2d 563, 574 (E.D. Pa. 1999) ("Although plaintiff argues again that it is not attacking an order setting rates but rather the illegitimate application of that order, for the court to rule on the application question would necessarily affect the rate-making orders of the Township.").

### B. Jurisdiction Based Solely on Constitutional Claims

As acknowledged in the Defendant's Notice of Removal [Doc. 1-2], federal jurisdiction in this case rests solely on the Plaintiff's claims under the Fourteen Amendment to the United States Constitution. Accordingly, the Act's requirement that jurisdiction in the case be "based solely on diversity of citizenship, or repugnance of the order to the Federal Constitution" is satisfied.

### C. No Interference with Interstate Commerce

The Johnson Act does not apply to rate orders that "interfere with interstate commerce." 28 U.S.C. § 1342(2). This requirement, however, is limited in scope:

> The second condition, requiring that the order "does not interfere with interstate commerce," is also of doubtful meaning and limited importance. It applies when a state attempts to set rates in a field preempted by Congress and possibly that is its only meaning. Most attempts to argue that an order interferes with interstate commerce have been rejected.

13

17A Wright, et al., Federal Practice and Procedure § 4236 at 233-35 (footnotes omitted); see also Kansas-Nebraska Gas Co. v. City of St. Edward, 234 F.2d 436, 440 (8th Cir. 1956) (finding no interference with interstate commerce because Congress had not occupied field of regulating gas distribution).

Even where courts have not limited this provision to areas where Congress occupies the field, such courts have recognized that interference "requires more than an incidental effect on interstate commerce." Tristani, 182 F.3d at 1211. "The rule is undisputed that a rate issued by a proper state body does not interfere with interstate commerce . . . unless it is directly burdensome or otherwise discriminatory of . . . interstate traffic." Kalinsky v. Long Island Lighting Co., 484 F. Supp. 176, 178 (E.D.N.Y. 1980) (citation omitted).

In the present case, the municipal classification of the meters at Plaintiff's facility do not interfere with interstate commerce because such classification affects only the rates for one facility in Polk County, North Carolina. Even if those rates ultimately affect what the Plaintiff charges the facility's residents, the Defendant concedes that those residents "are citizens of Polk County." [Defendant's Response to Interrogatory No. 4, Doc. 31-1 at

6]. Consequently, the Defendant's meter classifications, at most, affect only an intrastate matter.

The mere fact that the Plaintiff is a Pennsylvania company does not create "interference" with interstate commerce. The Johnson Act can apply where federal jurisdiction "is based solely on diversity of citizenship," 28 U.S.C. § 1342(1), which confirms that interference with interstate commerce does not arise just because one party to the transaction is an out-of-state resident. See, e.g., Kansas-Nebraska Gas Co., 234 F.2d at 440. Similarly, the fact that the Plaintiff operates facilities in other states does not establish that an undue interference with interstate commerce occurred in this case. The Defendant's rate change affects only the Plaintiff's Polk County facility. There has been no showing that the change in the water rate classification for this one facility has increased the costs of services provided by the Plaintiff to other out-of-state facilities. Thus, the Defendant's actions in changing the water and sewer rates at this one facility at most had only an incidental effect on interstate commerce. Thus, the Court finds that this element of the Act is satisfied.

### D. Reasonable Notice and Hearing

The Johnson Act applies only if a rate order was "made after reasonable notice and hearing." See 28 U.S.C. § 1342(3). The Plaintiff has never contended that it was denied either. [See Complaint, Doc. 1-2; Doc. 31]. Nevertheless, the Defendant argues that this provision is unmet. [Doc. 30 at 7-8]. The notice and hearing requirements, however, exist to protect rate-payers, not rate-setters. The Court has not found any case (and the Defendant has cited to none) where this provision was deemed unmet although the rate-payer was satisfied with the notice and hearing provided. As the rate-setter, the Defendant lacks standing to contend that the Plaintiff was not given reasonable notice and hearing.

In any event, the Johnson Act requires no formal notice or hearing and imposes no standard of its own. It requires only that the rate-making body satisfy any notice or hearing requirements mandated by state law. "The Johnson Act does not engraft its own undefined standards of notice and hearing upon the rate making bodies of the several states . . . ." Tennyson v. Gas Serv. Co., 506 F.2d 1135, 1141 (10th Cir. 1974); see also Kalinsky, 484 F.Supp. at 178 (Johnson Act satisfied because New York's notice requirements satisfied).

The Defendant concedes that there is no requirement under North Carolina law that reasonable notice or hearing be provided before a municipality reclassifies a water meter. [Doc. 30 at 8]. Even so, the Plaintiff was given notice and a chance to be heard on the change in classification. The Defendant acknowledges that it met and communicated with the Plaintiff's representatives before making the reclassification. [Defendant's Response to Interrogatory No. 3, Doc. 31-1 at 5]. Further, after the initial reclassification, the Plaintiff repeatedly communicated with the Defendant to request that the meters be reclassified as commercial. [See Complaint, Doc. 1-1 at ¶ 38]. Considering that North Carolina law required no notice or hearing at all, the Plaintiff contends that these exchanges provided ample notice and an opportunity to be heard for the purposes of the Johnson Act. The Court agrees with the Plaintiff and therefore finds that this element is also satisfied.

E. **Available State Remedies**

The final requirement under the Act is that a "plain, speedy, and efficient" state remedy be available. 28 U.S.C. § 1342(4). The Plaintiff has never contended that the North Carolina's courts are inadequate in this regard. To the contrary, the Plaintiff originally filed this action in state court and, after removal by the Defendant, consented to dismissal of its federal

17

claims and remand. Nevertheless, the Defendant contends that this provision is unmet. [Doc. 30 at 9].

"To be 'plain, speedy and efficient,' the state remedy need only satisfy minimal procedural requirements." US West, Inc. v. Nelson, 146 F.3d 718, 724 (9th Cir. 1998). "Succinctly put, the state remedy is 'plain' as long as the remedy is not uncertain or unclear from the outset; 'speedy' if it does not entail a significantly greater delay than a corresponding federal procedure; and 'efficient' if the pursuit of it does not generate ineffectual activity or unnecessary expenditures of time or energy." Id. at 724-25. Here, the Plaintiff's state remedies are clear; the North Carolina courts are available to hear the Plaintiff's claims and can resolve this action without any significantly greater delay than this Court could. Moreover, the pursuit of this action in state court would not "generate ineffectual activity or unnecessary expenditures of time or energy." See id. This matter is still in the pleadings stages. To the extent that the parties have already engaged in discovery, investigation, and research of this matter at the federal level, their efforts need not be duplicated upon remand, as such material will be just as usable in state court. For all of these reasons, the Court concludes that the pursuit of these

claims in state court would be "plain, speedy, and efficient," thereby satisfying the final element of the Johnson Act.

Because all of the requirements of the Johnson Act have been met, the Court concludes that it is deprived of subject matter jurisdiction in this case. Accordingly, the Court will remand this case to the Superior Court for Polk County for further proceedings.

**IT IS, THEREFORE, ORDERED** that this matter is hereby **REMANDED** to the Superior Court for Polk County due to lack of subject matter jurisdiction under the Johnson Act, 28 U.S.C. § 1342. In light of the Court's ruling, the Magistrate Judge's Memorandum and Recommendation and the Defendant's Motion to Dismiss are rendered moot.

**IT IS SO ORDERED.**

Signed: March 6, 2012

Martin Reidinger
United States District Judge